IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**JOSHUA SIMMONS**                                                                                    **PLAINTIFF**
**ADC #166423**

v.                                                          No: 4:17-cv-00137 PSH

**BRIANN LIMANDRI,** *et al.*                                                                  **DEFENDANTS**

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff Joshua Simmons, a former detainee at the Saline County Detention Facility ("SCDF"), filed this *pro se* civil rights complaint against defendants Briann LiMandri and JP Massiet (the "Defendants"). *See* Doc. No. 2. Simmons alleges that Defendants violated his constitutional rights by not providing him with adequate medical care. *Id.* Specifically, Simmons' complaint provides:

> I have been in the Saline Co. Jail since Dec. 14, 2016. I have 3rd degree burns covering over 74% of my body. I have skin graphs over 74% of my body. The whole time I have been here the Nurse Brian and the Lt. Massiet have done nothing to help me with this issue. I am in constant pain. My skin graphs are not healing properly due to lack of medicated lotions. They just keep ignoring this issue. I will also never look the same Due to lack of medication and medicated lotions I need.

*Id.* at 4. Simmons sues the Defendants in both their individual and official capacities. *Id.* at 2.

Before the Court is a motion for summary judgment, a brief in support, and a statement of undisputed material facts filed by each Defendant (Doc. Nos. 26, Exhibit 31). Simmons did not file a response to either Defendant's motion. Because Simmons failed to controvert the facts set forth in Defendants' statements of undisputed facts, Doc. Nos. 28 & 31, those facts are deemed

admitted. *See* Local Rule 56.1(c). The Defendants' statements of undisputed facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute and that Defendants are entitled to judgment as a matter of law.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are

about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Undisputed Facts

The following undisputed facts were submitted by Defendants and are supported by the following documents attached to Defendant Massiet's statement of undisputed facts: medical records from Arkansas Children's Hospital (Doc. No. 26, Exhibit 1[1]); Affidavit of Philip Bentley (Doc. No. 26, Exhibit 2); Affidavit of Trent Smith with Simmons' medical records attached (Doc. No. 26, Exhibit 3); Affidavit of JP Massiet (Doc. No. 26, Exhibit 4); and Arkansas Department of Corrections Medical Records (Doc. No. 26, Exhibit 5). Defendant LiMandri submitted most of the same medical records. *See* Doc. Nos. 30-1 & 30-2.

1. Simmons has burns on 70% of his body as a result of a suicide attempt that occurred prior to his incarceration, and he has undergone multiple surgeries for grafting.[2] Doc. No. 30-1 at 2-4.

2. Less than two months before his arrest date, Simmons presented (on October 27, 2016) to Arkansas Children's Hospital complaining of pain and asking for narcotics. *Id.*

3. Simmons denied having a primary care provider ("PCP"), and denied being on any medications. *Id.*

4. He admitted that he had no open areas on his skin, and was not performing any wound care. *Id.* This was verified by the physical exam at ACH. *Id.*

---

[1] Because Defendant Massiet's motion for summary judgment and related pleadings were filed under seal, the exhibits to his motion for summary judgment do not have individual docket numbers.

[2] An Inmate Medical Form dated December 14, 2016 states that Simmons was hospitalized in May 2016 for burns. Doc. No. 30-2, at 3.

5. The ACH plan noted that he had healed, and that he will not be given any further narcotic pain prescriptions. *Id.* ACH gave him only a limited prescription for Gabapentin but instructed him to find a PCP to write further prescriptions. *Id.*

6. Simmons was arrested on December 14, 2016, and placed into the Saline County Detention Center ("SCDC"). Doc. No. 30-2 at 3; Doc. No. 26, Exhibit 2.

7 Turn Key Health is an organization that provides medical services for inmates housed at the SCDF. Doc. No. 26, Exhibit 3. SCDF relies on Turn Key to make medical recommendations regarding the inmates. Doc. No. 26, Exhibit 2; Doc. No. 26, Exhibit 3; and Doc. No. 26, Exhibit 4.

8. Turn Key Nurse Briann LiMandri first attempted to assess Simmons on December 15, 2016, but he refused to get out of bed and take part in the assessment. Doc. No. 30-2 at 1.

9. Simmons was later assessed by provider Patrick Stage, APN. *Id.* at 2. Simmons was noted to have a bottle with multiple pills in it upon admission. *Id.* The bottle label showed that Simmons had a prescription for Clonazepam, but Stage did not approve it for use by Simmons because it is a controlled substance which is not approved for use at the SCDF. *Id.*; Doc. No. 26, Exhibit 3.

10. The first time that Simmons requested medical care following his arrest on December 15, 2016, was via a Medical Request form on January 27, 2017. Doc. No. 30-2 at 4. Simmons stated, "I need to put in a sick call for my pain meds and anxiety meds plus my skin graphs are not healing right cause i supose too be on a high pro diet." *Id.* LiMandri responded to Simmons that he would be placed on the providers' list and scheduled for the next sick call. *Id.*

11. Simmons submitted a general request for medications and a high protein diet on January 27, 2017. Doc. No. 26, Exhibit 3 at 15. A sergeant Bentley responded that he was on the correct amount of proteins.

12. Massiet, a lieutenant at the SCDF, personally directed SCDF to provide all inmates with at least 2700-3000 calories daily, which is higher than required by jail standards. Doc. No. 26, Exhibit 4 at 2.

13. On February 14, 2016, Simmons was examined by provider Stage. Doc. No. 30-2 at 5. Stage noted that Simmons complained of pain, and ordered Simmons to be fast-tracked to an ADC facility and provision of a high protein diet. *Id.* Stage did not order any pain medication for Simmons. *Id.*

14. The next day, a nurse Cobb faxed a request to ADC for "FAST TRACK," noting that "74% of body is burned" and "We don't have the ability to care for this condition." *Id.* at 6. That document is noted as having been refaxed on both February 28, 2017, and March 2, 2017. *Id.*

15. On February 16, 2017, Simmons issued a second Medical Request form, and asked if the medical department had talked to ADC about a transfer. *Id.* at 8. He stated that his skin was very dry, itchy, and hurting, and that it was cracking open. *Id.* A nurse other than LiMandri responded to let Simmons know that medical had contacted ADC. *Id.*

16. Simmons submitted another medical request on February 22, 2017, complaining that he was in pain, and that his skin was "busting open, drying and cracking." *Id.* at 9. He stated that "I've been sentence to ADC, anyway need medical att....this is clearly medical neglect my skin is on fire." *Id.* A nurse other than LiMandri responded that she spoke with Simmons, and

that he had been started on Tylenol, 500mg, twice per day to help with his pain. *Id.* The nurse also charted that she would check on the status of Simmons' transfer request with ADC. *Id.*

17. Between February 24, 2017, and March 1, 2017, Simmons repeatedly requested either lotion for his skin, narcotic pain medication, or transfer to an ADC unit. *Id.* at 10-18. Each request was responded to, and the responses noted that Simmons' skin grafts were healed, informed him that lotion was available in the commissary, and updated him on the status of his transfer request. *Id.*

18. Simmons was sentenced to the ADC on February 13, 2017. Doc. No. 26, Exhibit 2.

19. Simmons was fast-tracked on March 3, 2017, and transferred to the ADC on March 9, 2017. *Id.* Sentencing usually takes up to twelve months from the time of arrest, and a transfer to the ADC can take up to three months. *Id.*

20. A medical encounter report dated March 29, 2017, indicates that Simmons was in no distress at that time. Doc. No. 26, Exhibit 5.

## IV. Analysis

### A. Official Capacity Claims

Defendants correctly assert that Simmons fails to state an official capacity claim. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against the defendants in their official capacities is in essence a suit against the county itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013).

Accordingly, as county employees, the Defendants can be held liable in their official capacities in this case only if Simmons can establish that a constitutional violation was committed pursuant to "an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009). Simmons does not assert that a custom or policy of Saline County was the moving force behind the claimed violations of his constitutional rights. Accordingly, Defendants are entitled to summary judgment on Simmons' official capacity claims, and those claims should be dismissed.

### B. Qualified Immunity

Defendants argue they are entitled to qualified immunity with respect to Simmons' individual capacity claims because Simmons cannot establish a constitutional violation. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In considering whether the Defendants

are entitled to qualified immunity, the Court first considers whether Simmons has presented facts sufficient to show the violation of a constitutional right as to any of his claims.

To prevail on an Eighth Amendment claim for deprivation of medical care, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs. *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir.1997). This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it. *Id.; see also Farmer v. Brennan,* 511 U.S. at 837; *Estelle v. Gamble,* 429 U.S. 97, 105 (1976). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). *See also Reid v. Griffin*, 808 F.3d 1191, 1192 (8th Cir. 2015) (holding that an inmate's disagreement with "diagnosis and treatment decisions is not actionable under § 1983"); *Popoalii v. Correctional Medical Servs.,* 512 F.3d 488, 499 (8th Cir. 2008) (disagreement with treatment decisions does not rise to the level of a constitutional violation); *Rowe v. Norris*, 198 Fed. Appx. 579, 580-81 (8th Cir. 2006) (no constitutional violation occurred where plaintiff disagreed with the treatment he received); *Bender v. Regier*, 385 F.3d 1133, 1337 (8th Cir. 2004) (holding that negligence in diagnosis or treatment of medical condition is not sufficient to establish a constitutional violation); *Prater v. Dep't of Corr.*, 11 Fed. Appx. 668, 669 (8th Cir. 2001) (holding that plaintiff failed to establish deliberate indifference where plaintiff did not allege he was "denied, delayed or refused" treatment, only that specific treatment was not provided); *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (mere disagreement with the course of medical treatment is insufficient to state Eighth Amendment claim).

The undisputed evidence shows that Defendants were not deliberately indifferent to Simmons' serious medical needs. When Simmons arrived at the SCDF, he did not have any current prescriptions for his burns and only had a prescription for Clonazepam, which is a controlled substance not allowed at the SCDF. APN Stage assessed Simmons and did not order any additional prescriptions or special lotions. Stage determined that Simmons should be fast-tracked to the ADC and should receive a high-protein diet. SCDF determined that Simmons was receiving the appropriate amount of protein, and Massiet instructed that all inmates receive a higher number of calories than the usual standard for inmates. In accordance with Stage's assessment, three requests to fast-track him were sent to the ADC, and he was in fact fast-tracked. Simmons was transferred to the ADC only twenty-three days after it was first ordered by APN Stage, and less than three months from the time of his original book-in. There is no evidence LiMandri or Massiet disregarded any medical orders given related to Simmons or were otherwise indifferent to his medical needs.

It appears that Defendants were not personally responsible for Simmons' medical treatment. LiMandri had limited interaction with Simmons. The record shows that LiMandri unsuccessfully attempted to assess Simmons the day after he was booked, and scheduled him for sick call in response to a January 27, 2017 medical request. There is no evidence she made any treatment decisions, failed to follow any orders, or was in any way deliberately indifferent to Simmons' needs. Additionally, there is no evidence Massiet was involved in Simmons' healthcare at all. He swore he had no conversations with Simmons, was not asked to provide Simmons with medical treatment, and did not deny Simmons any medical treatment. The Defendants may not be held liable under § 1983 unless they were personally involved in or had direct responsibility for the constitutional violations alleged by Simmons. *See Mayorga v. Missouri,* 442 F.3d 1128, 1132

(8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.") (internal quotations and citations omitted).

## V. Conclusion

For the reasons stated herein, Defendants' motions for summary judgment (Doc. Nos. 26 & 29) are granted, and this case is dismissed with prejudice.

SO ORDERED this 24th day of May, 2018.

_____
UNITED STATES MAGISTRATE JUDGE